## Tradesmen's National Bank *versus* The Third National Bank.

1. A draft on a bank to the order of the drawers passed into the hands of another bank, and was paid through the clearing-house, two days afterwards the signatures were found to be forged and repayment was demanded and refused. *Held*, that the first bank could recover from the second, under the Act of April 5th 1849, § 10.

2. A rule of the clearing-house was, "Errors in exchanges shall be

[Tradesmen's Bank *v.* Third National Bank.]

adjusted by the banks concerned, and checks not good shall be returned to the bank depositing them before one o'clock P. M." This rule applied only to ascertaining that the account was not overdrawn.

November 8th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 196, to October and November Term 1870.

To September Term 1870, The Third National Bank of Pittsburg brought an action of assumpsit against The Third National Bank.

The plaintiffs' affidavit stated their claim to be for the amount of the following draft :—

"2000.                    Pittsburg, Pa., Aug. 12th 1870.

At sight, pay to the order of ourselves two thousand dollars, value received, and charge the same to account of

WM. B. HAYS & SON.

To Third National Bank, }
    Pittsburg, Pa.    }  "

"ENDORSEL.

"Pay to the order of J. & E. Greenwald.

WM. B. HAYS & SON.

"*J. & E. Greenwald.*

"Pay C. Clark, Jr., Cash., or order, for account of First National Bank, Cincinnati, Ohio.

THEO. STANWOOD, Cashier.
P. S. JACK, Teller."

The affidavit further averred that the signatures of Wm. B. Hays & Son had been forged; that defendant was, on the 18th day of August 1870, at the city of Pittsburg, the holder of the above described draft, and as such then and there endorsed the same by its teller, P. S. Jack, and presented the same to plaintiff for payment, and plaintiff then and there paid the full amount of the said draft to the said defendant, and the said defendant then and there received the said amount; that on the 20th day of August 1870, plaintiff discovered that the signatures of Wm. B. Hays & Son had been forged, and that by reason thereof the said amount of $2000 had been erroneously paid by said plaintiff to said defendant on said draft; immediately on said 20th day of August, plaintiff notified defendant of said forgeries, and demanded repayment of the amount of said draft, the sum of $2000, but the said defendant refused to repay the same to said plaintiff; that on the 22d day of August 1870, plaintiff made another demand of the defendant of the repayment of the said amount, which was also declined; that subsequently, on the 23d day of August 1870, plaintiff, through a notary public, again demanded

[Tradesmen's Bank *v.* Third National Bank.]

of said defendant a repayment of the amount of said draft, which repayment was again refused, and the said notary public then and there duly protested the said draft for such non-repayment, &c.

The affidavit of defence averred:—

1. That defendant bank sent the draft to the Pittsburg Clearing House for collection, when it was delivered to the plaintiff bank under the recognised and printed rules of the Clearing House. The draft was handed to the officer of the plaintiff bank, first for examination, and then, if found genuine and correct, for payment. Said plaintiff bank did not return said draft to defendant bank until about noon of the second day after the same was delivered to it by the Clearing House, when it was required to deliver it before 1 P. M. of the day on which the plaintiff bank received it.

2. That defendant bank had no interest in the draft, except as the collecting agent of the First National Bank of Cincinnati.

3. That defendant bank had placed the amount of the money received to the credit of the First National Bank of Cincinnati, and had notified said bank of the same, thus placing it beyond the bank's control and remitting the money, before the plaintiff bank notified the defendant that the said draft was not genuine and correct.

4. That the loss, if any, must fall on the plaintiff bank, because the defendant bank was both ignorant and innocent of the character of said draft, and if the plaintiff bank had used proper diligence, the mistake would not have occurred.

5. That under the rules of the Clearing House, the failure of the plaintiff bank to ascertain the real character of the draft, and advise the defendant bank before 1 P. M., of the day on which the draft was delivered to it by the Clearing House, discharged the defendant bank and remitted the plaintiff to its action or actions against the other parties liable on said draft.

7. That the plaintiff bank, as well as the defendant bank, clear through the Pittsburg Clearing House, and are parties to and bound by the printed rules of the same, which were made part of the affidavit of defence.

The Clearing House rule referred to is as follows:—

" Errors in the exchanges shall be adjusted by the banks concerned, and checks not good shall be returned to the bank depositing them before 1 P. M.—the association not to be responsible in any case."

The court entered judgment against the ⸜defendants for $2013.21 for want of a sufficient affidavit of defence.

This was assigned for error on the removal of the case by the defendants to the Supreme Court.

*Kerr & Patterson*, for plaintiffs in error.—The paper was a

[Tradesmen's Bank *v.* Third National Bank.]

check, payable on demand : Act of May 21st 1857, § 1, Pamph. L. 629 ; Purd. 111, pl. 7 ; Byles on Bills, by Sharswood, 84 note. The entry of a forged check to the credit of the holder, in his bank-book, imposes the loss on the bank : Levy *v.* Bank of U. S., 4 Dallas 234 ; s. c., 1 Binn. 27 ; Price *v.* Neal, 3 Burrows 1354 ; Byles on Bills, 491. The Act of April 5th 1849, § 10, Pamph. L. 426, Purd. 111, pl. 5, does not change the law as to diligence : Rick *v.* Kelly, 6 Casey 527 ; Ellis *v.* O. S. Ins. & Trust Co., 4 Ohio St. R. 628.

*J. M. Kennedy* and *M. W. Acheson*, for defendants in error, referred to Act of 1849 ; Rick *v.* Kelly, *supra ;* 1 Bouvier's Law Dict. 588 ; 2 Parsons on Notes and Bills 436 ; Story on Agency § 800.

The opinion of the court was delivered, January 3d 1871, by
READ, J.—The drawee of a bill is held bound to know the handwriting of his correspondent, the drawer ; and if he accepts or pays a bill in the hands of a bonâ fide holder, for value, he is concluded by the act, although the bill turns out to be a forgery. If he has accepted, he must pay ; and if he has paid, he cannot recover the money back. This was the law of Pennsylvania as settled by the case of Levy *v.* The Bank of the United States, 1 Binn. 27. This rule was altered by the 10th section of the Act of the 5th April 1849, Pamph. L. 426, which enacts : " That wherever any value or amount shall be received as a consideration, in the sale, assignment, transfer or negotiation, or in payment of any bill of exchange, draft, check, order, promissory note or other instrument negotiable within this Commonwealth by the holder thereof from the endorsee or endorsees, or payer or payers of the same, and the signature or signatures of any person or persons represented to be parties thereto, whether as drawer, acceptor or endorser, shall have been forged thereon, and such value or amount by reason thereof erroneously given or paid, such endorsee or endorsees, as well as such payer or payers respectively, shall be legally entitled to recover back from the person or persons previously holding or negotiating the same the value or amount, so as aforesaid given or paid by such endorsee or endorsees, or payer or payers respectively, to such person or persons, together with lawful interest thereon from the time that demand shall have been made for repayment of the same."

This act, it will be seen, directly reverses in effect the case of Levy *v.* The Bank, and the drawee may recover back money paid on a forged name of the drawer.

A draft, purporting to be drawn in Pittsburg, Pa., August 12th 1870, in these words :—

[Tradesmen's Bank *v.* Third National Bank.]

" $2000.

" At sight pay to the order of ourselves two thousand dollars, value received, and charge the same to account of

" The Third National Bank,  " Wm. B. Hays & Son.
 " Pittsburg, Pa.

[Endorsed.]  " Pay to the order of J. & E. Greenwald.
        " Wm. B. Hays & Son."

[All this was a forgery.]
[What follows are genuine endorsements.]
" J. & E. Greenwald."

"Pay C. Clark, Jr., Cash., or order for account of First National Bank, Cincinnati, Ohio.

      " Theo. Stanwood, Cashier.
      " P. S. Jack, Teller."

The defendants being the holders of this draft, presented it at the clearing-house, on the 18th August, and it was paid by the plaintiffs. The plaintiffs having discovered the draft was forged, immediately on the 20th August notified the defendants of the forgeries, and demanded repayment of them; and this was renewed on the 22d and 23d August.

These facts would seem to bring the case within the purview of the Act of Assembly, and to entitle the plaintiffs to a repayment of the amount erroneously paid to the defendants.

If the truth had been known, the defendants never could have presented the draft for payment; and now that it is known, it is equally clear they had no legal claim of any kind upon the plaintiffs.

In what capacity did they present the draft? Clearly as the holder to demand payment of the payers, and in that capacity the money was received. If it had been refused, they could have instituted proceedings to recover the amount in their own name. The act is a practical one, and looks for repayment from the persons previously holding or negotiating the same of the amount paid by such payer to such person.

If the defendants were the agents of another bank this makes no difference, as in the present instance the money received is in the hands of the defendants, and we are not called upon to decide what would have been their situation if it had been actually paid over by them. The rule of the Clearing-House simply applies to ascertaining that the account was not overdrawn, and it is clear this was not the case with Hays & Son.

         Judgment affirmed.